## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**INEZ MARIA GARCIA, individually and
with DENNIS DIONICIO GARCIA, individually
and jointly as parents and next friends of
DEJA BONET GARCIA and NICOLAS
DIONICIO GARCIA, minors,**

       **Plaintiffs,**

**vs.**                                 **No. CIV 04-0498 RB/LCS**

**UNITED STATES OF AMERICA, UNITED STATES
AIR FORCE, JAMES G. ROCHE, Secretary of the
United States Air Force, CHENEGA MANAGEMENT, LLC,
NORTHEAST CONSTRUCTION COMPANY of Nevada,
and JOHN DOE, Contractor,**

       **Defendants.**

**Consolidated With:**

**DENNIS DIONICIO GARCIA as Personal
Representative of the Estate of MARCELINO
GARCIA,**

       **Plaintiff,**

**vs.**                                 **No. CIV 04-0499 RB/LCS**

**UNITED STATES OF AMERICA, UNITED STATES
AIR FORCE, JAMES G. ROCHE, Secretary of the
United States Air Force, CHENEGA MANAGEMENT, LLC,
NORTHEAST CONSTRUCTION COMPANY of Nevada,
and JOHN DOE, Contractor,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** came before the Court on Defendant Northeast Construction Company's

("Northeast's") Motion for Summary Judgment on Consolidated Second Amended Complaint (Doc.

119), filed on January 13, 2006.  Jurisdiction is founded upon 28 U.S.C §§ 1331 and 1367.[1]  Having

reviewed the submissions of the parties and the relevant law, the Court finds that this motion should

be denied.

## I.  Background.

From February 1996 until August 2002, the United States Air Force assigned Inez Maria

Garcia, Dennis Dionicio Garcia, and their two minor children, Deja Bonet Garcia and Nicolas

Dionicio Garcia, ("the Garcias"), to live in Unit 2553A ("2553A") on Holloman Air Force Base

("HAFB") near Alamogordo, New Mexico.  Marcelino Garcia visited the Garcias in May 2001, and

he died on May 27, 2001.  The Garcias allege that faulty construction, negligent maintenance, and

ineffective remediation allowed toxic molds to grow in 2553A, and that exposure to the toxic molds

caused them harm and damages.

The Garcias submitted administrative claims to the Government, which were denied.  The

Garcias brought suit, alleging negligence, negligent supervision, and negligent retention against the

Government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346; 2671, *et seq.*, ("FTCA"), as well

as state-law negligence claims against Northeast and Chenega Management, LLC ("Chenega").  On

January 9, 2006, the claims against Chenega were dismissed pursuant to a settlement.

The Government filed a motion to dismiss for lack of subject matter jurisdiction or, in the

---

[1]After summary judgment was granted on the federal claims, the Court had discretion to dismiss the state-law claims for lack of subject matter jurisdiction.  *See* 28 U.S.C. § 1367(c)(3). Given the substantial time and energy that were expended prior to the disposition of the federal claims, the Court finds that judicial economy, convenience and fairness would be served by retaining federal jurisdiction over the state-law claims.  *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

alternative, for summary judgment, arguing that the claims against it were barred by the discretionary function exception to the FTCA.  In a Memorandum Opinion and Order issued on June 30, 2005, the Court construed the motion as a motion for summary judgment and determined that the discretionary function barred the claims against the Government.  The Garcias filed a motion for reconsideration, which was denied on May 11, 2006.

In its motion for summary judgment, Northeast argues that (1) it owed no duty to the Garcias; (2) there was no proximate cause; and (3) NMSA 1978, § 37-1-27 bars the claims.

## II.  Standard.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'"  *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Id.*

## III.  Discussion.

### A. Whether Northeast owed a duty to the Garcias.

The Garcias contend that water incursion through a leaky roof on 2553A allowed mold to grow in their residence.  (Pretrial Order at 3.)  The Garcias assert that Northeast was negligent because it performed defective construction on 2553A.

> [A] negligence claim requires the existence of a duty from a defendant
> to a plaintiff, breach of that duty, which is typically based upon a
> standard of reasonable care, and the breach being a proximate cause
> and cause in fact of the plaintiff's damages.  Negligence encompasses
> the concepts of foreseeability of harm to the person injured and of a
> duty of care toward that person.  Negligence is generally a question
> of fact for the jury.  A finding of negligence, however, is dependent
> upon the existence of a duty on the part of the defendant. Whether a
> duty exists is a question of law for the courts to decide.

*Herrera v. Quality Pontiac*, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003) (citations omitted).

Northeast contends that it did not have a duty to the Garcias because it did not renovate the

roof on 2553A.  Northeast has submitted evidence that the exterior roof on 2553A was complete by

May 29, 1992.  (Status Schedule, Work in Place submitted in reduced form in Def. Ex. C and

attached in enlarged form to Letter from Judd C. West to Judge Brack dated 2-17-06.) ("Status

Schedule.")  The Government awarded the Phase I Contract to Northeast on May 7, 1993.  (Def. Ex.

A.)  Northeast reasons that, because the exterior roof on 2553A was complete before it was awarded

the contract, it did not have a duty to the Garcias.

The Status Schedule establishes that 2553A was not complete when Northeast was awarded

the contract.  (Status Schedule, Def. Ex. C.)  With respect to the exterior of 2553A, the carpentry,

trusses, roof sheathing and felt, roof shingles and flashing, windows, doors, and ducts were installed.

(*Id.*)  However, the exterior ceiling insulation, soffit, fascia, gutters, down spouts, and evaporative

cooler were "zero completed."  (*Id.*)

As of May 29, 1992, the only completed items in the interior of 2553A were the rough-in

plumbing and concrete.  (Status Schedule, Def. Ex. C.)  The carpentry work was 60% complete.

(*Id.*)  The interior insulation, drywall, plumbing trim, HVAC, residential equipment, and appliances

were "zero completed."  (*Id.*)  The record establishes that Northeast performed a significant amount

of work on 2553A.  Northeast had a duty to exercise reasonable care with respect to the renovation of 2553A because "[e]very person has a duty to exercise ordinary care for the safety of the person and the property of others." NMRA 2003, UJI 13-1604.

Moreover, the Phase I Contract Specifications imposed a duty on Northeast to inspect the project during renovations.  The Specifications required Northeast to "examine the substrates and conditions under which insulation work is to be performed." (Pl. Ex. C attached to Doc. 101.)  The Specifications directed Northeast to "[c]oordinate installation of roof mounted components or work projecting through the roof," "[v]erify roof openings are framed, sized and located prior to installing work for this Section," and "[c]omplete installation to provide weather tight service."  (*Id*.)  The Specifications establish that Northeast had a duty to inspect the structure during construction.

Northeast argues that it owed no duty to the Garcias because the Garcias did not contract with Northeast.  The absence of privity of contract between a plaintiff and a contractor does not preclude a suit for negligent construction of a home.  *Steinberg v. Coda Roberson Const. Co.*, 79 N.M. 123, 124-125, 440 P.2d 798, 799-800 (1968).  Subsequent occupants are in the class of persons foreseeably to be injured by defects in the construction of a home.  *Id*.  As tenants of a housing unit constructed for military families, it was foreseeable that the Garcias could be injured by defects in the construction of 2553A.  Northeast had a duty to use reasonable care in the renovation of 2553A

**B. Whether Northeast is entitled to summary judgment on proximate case.**

"Proximate cause is generally a question of fact for the jury." *Herrera v. Quality Pontiac*, 134 N.M. at 48, 73 P.3d at 186.  Questions of both duty and proximate cause are related to the concept of foreseeability.  *Id.*  "'Both questions of foreseeability are distinct; the first must be decided as a matter of law by the judge, using established legal policy in determining whether a duty was owed

petitioner, and the second, proximate cause, is a question of fact.'" *Id.* (quoting *Calkins v. Cox Estates*, 110 N.M. 59, 61, 792 P.2d 36, 38 (1990)).  The proximate causation element is "concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Herrera v. Quality Pontiac*, 134 N.M. at 48, 73 P.3d at 186.

In some cases, summary judgment may be appropriate on the issue of proximate cause.  "A court may decide questions of negligence and proximate cause, if no facts are presented that could allow a reasonable jury to find proximate cause." *Spencer v. Health Force, Inc.,* 137 N.M. 64, 71, 107 P.3d 504, 511 (2005) (quoting *Calkins*, 110 N.M. 65 n. 6, 792 P.2d 36, 42 n. 6).  This is not such a case.

Northeast performed a significant amount of work on 2553A.  A few years later, 2553A was infested with mold.  The Garcias' allege that the mold made them sick.  The Garcias' expert, Gordon McKeen, testified in his deposition[2] that the mold growth was caused by water leaks resulting from mistakes or defects during renovation.  (Pl. Ex. 3.) The Garcias have presented facts that would allow a reasonable jury to find proximate cause between defects in the renovation work performed by Northeast and the mold infestation.

"Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence be foreseeable." *Spencer,* 137 N.M. at 71, 107 P.3d at 511 (quoting "*Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 730-31, 688 P.2d 333, 340-41 (Ct. App.1984)).  Construed in the light most favorable to the Garcias, it was foreseeable that

---

[2] Northeast objects to consideration of Mr. McKeen's affidavit on the grounds that the affidavit (1) was drafted after the deadline for expert witness disclosures, (2) discusses issues that were not the subject of his report, (3) ignores material facts, and (4) states legal conclusions and opinions that contradict or are inconsistent.  The Court need not address these objections because the affidavit is not relied upon herein.

the Garcias could be injured by defects in the construction of 2553A.  Thus, summary judgment on

the issue of proximate cause is inappropriate.

### C. Whether NMSA 1978, § 37-1-27 bars the claims.

Section 37-1-27 reads:

> No action to recover damages for any injury to property, real or personal, or for injury to the person, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of a physical improvement to real property, nor any action for contribution or indemnity for damages so sustained, against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity, shall be brought after ten years from the date of substantial completion of such improvement; provided this limitation shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith. The date of substantial completion shall mean the date when construction is sufficiently completed so that the owner can occupy or use the improvement for the purpose for which it was intended, or the date on which the owner does so occupy or use the improvement, or the date established by the contractor as the date of substantial completion, whichever date occurs last.

Section 37-1-27 is a statute of repose; it begins to run from the statutorily-defined time

without regard to when the underlying cause of action accrues and without regard to the discovery

of injury or damages.  *See Garcia v. La Farge*, 119 N.M. 532, 537, 893 P.2d 428, 433 (1995)

(distinguishing between statutes of limitation and statutes of repose).  The Garcias filed this suit on

May 7, 2004.  In order to be barred by Section 37-1-27, the date of substantial completion must have

been on or before May 7, 1994.

The record establishes that substantial completion occurred significantly later than May 7,

1994.  A Northeast subcontractor installed insulation in 2553A on October 18, 1995.  (Def. United

States Ex. 27 attached to Doc. 49.)  On December 15, 1995, the Government agreed to release

7

Northeast from further work on the project as of that date.  (Def. Ex. D.)  On February 16, 1996, the

Garcias moved into 2553A.  (Def. United States Exs. 3, 11, 12 attached to Doc. 49.)  Under any

statutory definition, substantial completion occurred well within the ten-year period.  Thus, Section

37-1-27 does not bar the claims against Northeast.

**WHEREFORE,**

    **IT IS ORDERED** that Defendant Northeast's Motion for Summary Judgment on

Consolidated Second Amended Complaint (Doc. 119), filed on January 13, 2006, is **DENIED.**

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**